IN THE UNITED STATES DISTRICT COURT
IN THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 19-CV-410

| | |
|---|---|
| RONNIE LEE SANDERS,<br><br>  Plaintiff,<br><br>v.<br><br>SMITH DEBNAM NARRON DRAKE SAINTSING & MYERS LLP AND FIRST TECHNOLOGY FEDERAL CREDIT UNION,<br><br>  Defendants | **BRIEF IN SUPPORT OF MOTION TO DISMISS** |

NOW COMES Defendant, First Technology Federal Credit Union ("First Technology"), by and through undersigned counsel, and hereby submit this brief in support of its motion to dismiss.  For the reasons set forth below, First Technology requests that the Court dismiss Plaintiff's Complaint.

## NATURE OF THE MATTER BEFORE THIS COURT

While styled as a new lawsuit, this lawsuit is a continuation of a state court lawsuit in which Plaintiff, Ronnie Lee Sanders ("Sanders") failed to prevail in his claims against First Technology.  Sanders' claims fail again.

## STATEMENT OF THE FACTS AND PROCEDURAL HISTORY

In June 2017, Sanders purchased a used 2016 Nissan Murano (the "Vehicle") from Vann York Chevrolet, Inc. ("Vann York") in High Point, North Carolina.  (Doc. 3 at ¶¶ 19-20).  As part of the transaction, Sanders financed the purchase of the Vehicle,

1

which was assigned to First Technology.  (Doc. 3 at ¶ 22).  As part of the transaction, Sanders signed a Retail Installment Sales Contract ("RISC"), which, among other things, required any disputes among the parties, which included assignee, First Technology, were required to be decided by arbitration and, if arbitrated, waived Sanders right to be part of a class action lawsuit.  *See* Answer, with Counterclaims of Defendant Ronnie Lee Sanders in *First Technology Federal Credit Union v. Ronnie Lee Sanders*, Guilford County District Court, Case Number 18-CVD-4641 (the "First Lawsuit"), at ¶ 10, attached hereto as Exhibit "A."

Almost immediately after accepting delivery of the Vehicle, Sanders had problems with the Vehicle.  (Doc. 3 at ¶ 23).  He alleges he informed Vann York and First Technology about these problems.  (Doc. 3 at ¶¶ 24-26).  Sanders then voluntarily returned the Vehicle back to Vann York and never made any payments.  (Doc. 3 at ¶ 28).

First Technology sent Sanders three letters noting that he was behind on paying for the Vehicle.  (Doc. 3 at ¶¶ 30, 32, and 34).  One of those letters, dated September 28, 2017, entitled "Notice of Our Plan to Sell Property" informed Mr. Sanders that he could be liable for the difference in the value of the Vehicle and his loan amount.  (Doc. 3 at ¶ 32 and First Lawsuit at ¶ 18).  In the First Lawsuit, Sanders contended that the contents of the "Notice of Our Pan to Sell Property" letter did not conform to statutory requirements.  *See* First Lawsuit at ¶¶ 22, 48-54.  First Technology then sold the Vehicle. (Doc. 3 at ¶ 33).

On or about April 13, 2018, co-defendant Smith, Debman, Narron, Drake, Saintsing & Myers, LLP ("Smith Debnam"), on behalf of First Tech, filed a complaint against Sanders for the balance owed on the Vehicle in the First Lawsuit. In response, Sanders filed a counterclaim and sought class action status. *See* First Lawsuit. Sanders alleged that First Technology had violated portions of Article 9 of the UCC and was entitled to declaratory relief. *See* First Lawsuit. Sanders did not allege in his answer or his counterclaim that he voided the RISC. *See* First Lawsuit. In fact, he suggested that the RISC was valid and enforceable and his claims against First Technology were premised on the very notion that a "security agreement" existed and First Technology, as a "secured party" under the "security agreement," owed duties to Sanders under Article 9 of the UCC. *See* First Lawsuit at ¶ 3 of the Answer & ¶¶ 10, 11, 13, 16, 17 and 48-54 of the Counterclaim.

On or about September 27, 2018, First Technology filed a motion to dismiss the counterclaim, or, alternatively, to stay pending arbitration pursuant to Rules 12(b)(6) and 12(b)(1) of the North Carolina Rules of Civil Procedure. Based on Sanders' apparent position that the RISC was valid and enforceable, First Technology's motion to dismiss focused on the arbitration provision, which required that any dispute between Sanders and First Technology be arbitrated.

On November 27, 2018, two months after First Technology filed its motion to dismiss, and two days before the hearing on the motion to dismiss, Sanders submitted an affidavit in opposition to the motions to dismiss. *See* Defendant/Counterclaimant Ronnie

Lee Sanders' Affidavit in Opposition to Motion to Dismiss or, Alternatively, Motion to Stay Pending Arbitration ("Affidavit"), attached hereto as Exhibit "B." In the affidavit, Sanders alleged that Vann York made several material misrepresentations concerning the sale of the Vehicle. *See id.* It is worth noting there is no indication that First Technology was involved in any way in any misrepresentations to Sanders. *See id.* In the affidavit, for the first time in the litigation, Sanders also asserted that based on the alleged material misrepresentations made by Vann York during the sale of the Vehicle, he voided any and all contracts with Vann York or First Technology, which necessarily included the RISC, the operable "security agreement." *See* Affidavit at ¶ 22 ("[t]here is no contract between me and Vann York or between me and First Tech[nology]").

Sanders' assertion that the RISC was now void was clearly an attempt to avoid the requirements of the arbitration provision, and its express bar on class action claims. As First Technology was before the Court on a motion to dismiss, First Technology had no choice but to stipulate to Sanders' allegations for the purposes of its motion. Accordingly, at the hearing on the motion to dismiss, First Technology argued that absent a valid and enforceable agreement, Sanders' claims for violations of Article 9 of the UCC and declaratory relief could not survive as a matter of law. The Trial Court agreed. First Technology's argument and the Trial Court's decision were based entirely on Sanders' unilateral decision to submit an affidavit in which he contended the RISC was void.

On or about January 18, 2019, Sanders appealed the Trial Court's decision. After briefing, the North Carolina Court of Appeals decided that, given Sanders' decision to

4

Case 1:19-cv-00410-UA-JEP   Document 15   Filed 12/20/19   Page 4 of 12

void the RISC, there was no "security agreement" and First Technology was not a "secured party" under Article 9 of the UCC and did not have to follow any statutory requirements. *See First Technology Federal Credit Union v. Sanders*, 831 S.E.2d 658 (N.C. App. 2019) (unpublished). Thus, the North Carolina Court of Appeals affirmed the decision of the Trial Court and dismissed Sanders' counterclaims against First Technology. *See id*.

On October 24, 2019, Sanders filed the instant lawsuit against First Technology. (Doc. 3). Sanders asserts a federal claim against Smith Debnam. (Doc. 3 at ¶¶ 40-42). However, Sanders only asserts a single state law claim against First Technology. (Doc. 3 at ¶¶ 43-46).

## QUESTIONS PRESENTED

1. Does this Court have subject matter jurisdiction over the claims against First Technology?

2. If subject matter jurisdiction exists, are Sanders' claims against First Technology barred by the doctrine of res judicata.

3. If subject matter jurisdiction exists, and the Sanders' claims are not barred by res judicata, has Sanders stated a claim for which relief can be granted.

## LEGAL ARGUMENT

The Court does not have subject matter jurisdiction over the claim against First Technology. Even if the Court did have subject matter jurisdiction, Sanders' claim against First Technology is barred by the doctrine of res judicata. Finally, even if the

5

Court had subject matter jurisdiction and Sanders' claim was not barred by res judicata, the undisputed facts as alleged in the Complaint fail to state a claim against First Technology upon which relief can be granted. Accordingly, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff's claim against First Technology must be dismissed.

**A. The Court Does Not Have Subject Matter Jurisdiction Over The Claim Against First Technology.**

There is no dispute that Sanders' single claim against First Technology is a state law claim. (Doc. 3 at ¶¶ 43-46). Further, there is no dispute that Sanders' claim against First Technology, even if successful, is less than $75,000. (Doc. 3 at Demand For Judgment). Thus, there is no independent basis for this Court to have subject matter jurisdiction over the claim asserted against First Technology. Thus, Sanders asserts that the Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367. (Doc. 3 at ¶ 13).

28 U.S.C. § 1367(a) provides, "[e]xcept as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." To determine whether a state law claim is part of the same "case or controversy" as the federal claims, Courts look to the standard set by the United State Supreme Court in *United Mine Workers of America v. Gibbs*, 383 U.S. 715

(1966). *See Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 662 (4th Cir.

1998). The Court in *Gibbs* stated:

> Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is [a federal claim], and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." The federal claim must have substance sufficient to confer subject matter jurisdiction on the court….The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole.

*Gibbs*, 383 U.S. at 725 (internal citations omitted and emphasis in original).

Here, there is no relationship between the federal claim and the state law claim.

The federal claim is entirely against Smith Debnam. Whereas, the state law claim is

entirely against First Technology. If Smith Debnam were not a party to the lawsuit, no

federal claims, and thus, no supplementary jurisdiction, could be asserted. This is not a

situation where First Technology faces both federal and state law claims. First

Technology only faces state law claims.

Moreover, the state and federal claims do not derive from a common nucleus of

operative facts. The federal claim allegedly arises from the complaint filed by Smith

Debnam in the First Lawsuit. Whereas, the state law claim allegedly arises from three

letters that First Technology sent to Sanders. One would not expect it would be

7

necessary for Sanders to try his separate and distinct claim against Smith Debnam in the same action with his claim against First Technology.

Accordingly, the Court does not have supplementary jurisdiction and the claims against First Technology must be dismissed.

**B. The Claim Against First Technology Is Barred By The Doctrine Of Res Judicata.**

Even if the Court has subject matter jurisdiction over the claim asserted against First Technology, the claim is barred by the doctrine of res judicata. Under North Carolina law, for res judicata to apply there must be three elements. First, a final judgment on the merits in an earlier suit. Second, an identity of the causes of action in both the earlier and the later suit. And, third, an identity of the parties or their privies in the two suits. *See Johnson v. Bank of Am., N.A.*, 225 N.C. App. 265, 736 S.E. 2d 648 (2013); *Smith v. Bank of the Carolinas*, 2012 U.S. Dist. LEXIS 146991 * 17 (M.D.N.C. 2012).

There should be no dispute that there was a final judgment on the merits of the First Lawsuit and that the First Lawsuit involved both Sanders and First Technology. Accordingly, the only potential argument would relate to whether this lawsuit and the First Lawsuit shared an identity of the causes of action. They do.

Res judicata "not only bars 'the relitigation of matters determined in the prior proceeding but also all material and relevant matters within the scope of the pleadings, which the parties, in the exercise of reasonable diligence could and should have brought forward.'" *Johnson*, 225 N.C. App. 265, 736 S.E. 2d 648 *quoting Holly Farm Foods,*

8

*Inc. v. Kuykendall*, 114 N.C. App. 412, 416, 442 S.E.2d 94, 97 (1994). "The defense of res judicata may not be avoided by shifting legal theories or asserting a new or different ground for relief." *Rodgers Builders v. McQueen*, 76 N.C. App. 16, 20, 331 S.E.2d 726, 735 (1985).

Here, Sanders asserts violations of the North Carolina Debt Collection Act based on the actions of First Technology in some of the very same letters that were at issue in the First Lawsuit. If, as Sanders contended in the Affidavit, the RISC was void based on the actions of Vann York, Sanders "in the exercise of reasonable diligence could and should have brought forward" claims related to alleged improprieties in trying to enforce that contract, including collecting on any debt arising therefrom.

Given that there is an identity of the causes of action, the doctrine of res judicata bars Sanders' claim against First Technology and that claim must be dismissed.

**C.  Sanders Fails To State A Claim Upon Which Relief Can Be Granted.**

If this Court determines that it has subject matter jurisdiction over the claim asserted against First Technology, and that claim is not barred by the doctrine of res judicata, Sanders fails to state a claim upon which relief can be granted based on the allegations as pled in the complaint.

Sanders asserts that each of three letters First Technology sent to him were fraudulent, deceptive and misleading and an unconscionable means of attempting to collect a debt "First Tech[nology] **later admitted** had ceased to exist." (Doc. 3 at ¶¶ 44-46) (emphasis added). Sanders' claim against First Technology is based entirely on this

9

premise. As an initial point, First Technology admitted Sanders voided the RISC at a hearing on a motion to dismiss, where all facts are construed in favor of Sanders. In essence, First Technology conceded that if everything Sanders said was accurate, his claims did not survive.

Regardless, even if the contract were voided, Sanders admits it was not voided until after the three letters at issue were sent. At the time the three letters were sent, the contract was valid. In fact, Sanders' own pleadings in the First Lawsuit are based on the very idea that the contract was valid. It defies common sense and logic to suggest that First Technology acted inappropriately in sending letters to collect on a contract that Sanders did not declare was void until more than a year later.

Finally, it only makes logical sense that either res judicata applies or Sanders failed to state a claim for which relief can be granted. One of the two must be true. For res judicata not to apply, Sanders must argue that "in the exercise of reasonable diligence" he could not and should not "have brought forward" the claims asserted here because the contract had not yet been voided and he did not know to assert such claims. However, even if that were accurate, it is an implicit concession that First Technology did not act inappropriately in sending the letters as the contract had not yet been voided when those letters were sent and it would not have known that efforts to collect on the debt were allegedly improper.

Therefore, based on Sanders' own allegations, he fails to state a claim against First Technology for which relief can be granted.

## CONCLUSION

For the above stated reasons, First Technology respectfully request that the Court dismiss Plaintiff's claim against it.

This the 20th day of December, 2019.

/s/ Jeffrey B. Kuykendal
Jeffrey B. Kuykendal (Bar #: 37693)
McAngus, Goudelock and Courie, PLLC
Post Office Box 30307
Charlotte, North Carolina 28230
Phone: 707-643-6303
Fax: 704-643-2376
jeffrey.kuykendal@mgclaw.com
Counsel for First Technology Federal Credit
Union

11

## CERTIFICATE OF SERVICE

I hereby certify that on the date specified above, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing upon all parties.

/s/ Jeffrey B. Kuykendal
Jeffrey B. Kuykendal