# EXHIBIT "A"

STATE OF NORTH CAROLINA ~ IN THE GENERAL COURT OF JUSTICE
DISTRICT COURT DIVISION
COUNTY OF GUILFORD   GUILFORD CO., C.S.C.  No. 18 CVD 4641

|  | ) |  |
| --- | --- | --- |
| FIRST TECHNOLOGY FEDERAL | ) |  |
| CREDIT UNION, | ) |  |
|  | ) |  |
| Plaintiff/Counterclaim Defendant, | ) | CLASS ACTION |
|  | ) |  |
| v. | ) | JURY TRIAL DEMANDED |
|  | ) |  |
|  | ) |  |
| RONNIE LEE SANDERS, | ) |  |
|  | ) |  |
| Defendant/Counterclaimant. | ) |  |
|  | ) |  |

## ANSWER, WITH COUNTERCLAIMS,
## OF DEFENDANT RONNIE LEE SANDERS

Defendant RONNIE LEE SANDERS, by and through counsel, hereby

answers the Complaint of Plaintiff FIRST TECHNOLOGY FEDERAL CREDIT

UNION ("First Tech") as follows:

1.      Defendant is without knowledge or information sufficient to form a

belief as to the truth of each and every allegation contained in paragraph 1 of the

Complaint and therefore denies them.

2.      Defendant admits the allegations contained in paragraph 2 of the

Complaint.

3.      Defendant admits that he signed the Retail Installment Sale Contract

Agreement ("the Agreement") referenced in paragraph 3 of the Complaint. The

1

remainder of paragraph 3 of the Complaint consists wholly of legal conclusions to which no response is required. To the extent a response to the remainder of the paragraph is required, Defendant states that the Agreement speaks for itself.

4.      Paragraph 4 of the Complaint consists wholly of legal conclusions to which no response is required. To the extent a response is required, Defendant denies each and every allegation contained in paragraph 4 of the Complaint.

5.      Paragraph 5 of the Complaint consists wholly of legal conclusions to which no response is required. To the extent a response is required, Defendant states that the Agreement speaks for itself.

## FIRST AFFIRMATIVE DEFENSE

This lawsuit is an attempt to collect the deficiency allegedly still owing on a consumer debt that had been secured by a 2016 Nissan Murano, VIN# 5N1AZ2MH0GN118175 ("the Vehicle"). On or about September 28, 2017, First Tech took possession of the Vehicle and mailed Mr. Sanders a Notice of Intent to Sell Property ("Notice of Intent"), a copy of which is attached as **Exhibit A**. The Notice of Intent, however, did not advise Mr. Sanders whether or not he would be liable for any deficiency, as required by N.C. Gen. Stat. § 25-9-614. Therefore, under N.C. Gen. Stat. § 25-9 626, it is presumed that First Tech is not entitled to the deficiency it is seeking to collect in this action.

## SECOND AFFIRMATIVE DEFENSE

The Notice of Intent stated that First Tech would "sell the Vehicle at a private sale sometime after 10/19/2017." But, according to a CARFAX Report on the

2

Vehicle, the Vehicle was "sold at auction" on or about October 23, 2017. On information and belief, First Tech disposed of the Vehicle at an auction to which members of the public were invited; alternatively, on information and belief, First Tech disposed of the Vehicle at a dealer-only auction without informing Mr. Sanders of the date, time, and location of the auction. In either case, First Tech's Notice of Intent failed to meet the requirements of N.C. Gen. Stat. § 25-9-614. Therefore, under N.C. Gen. Stat. § 25-9 626, it is presumed that First Tech is not entitled to the deficiency it is seeking to collect in this action.

### THIRD AFFIRMATIVE DEFENSE

On information and belief, First Tech's sale of the Vehicle was commercially unreasonable. Therefore, under N.C. Gen. Stat. § 25-9 626, it is presumed that First Tech is not entitled to the deficiency it is seeking to collect in this action.

### FOURTH AFFIRMATIVE DEFENSE

Under the Federal Trade Commission's Trade Regulation Rule Concerning Preservation of Consumers' Claims and Defenses, 16 C.F.R. Part 433 ("Holder in Due Course Rule"), which was explicitly incorporated into the Agreement, First Tech is subject to all defenses which Mr. Sanders could assert against the seller of the goods obtained pursuant to the Agreement.

Here, the seller of the goods, Vann York Chevrolet Inc. of High Point, North Carolina ("Vann York"), fraudulently induced Mr. Sanders into signing the Agreement by misrepresenting the Vehicle's features and condition.

3

Moreover, Vann York Chevrolet Inc. also defrauded Mr. Sanders by adding negative equity from a previous retail installment sale contract agreement Mr. Sanders had signed approximately two weeks earlier ("the Previous Agreement"), related to a 2011 Ford Edge, VIN# 2FMDK3KC6BBA33005 ("the Previous Vehicle"). After taking possession of the Previous Vehicle, Mr. Sanders immediately encountered significant problems with its transmission and power system. Vann York fraudulently induced Mr. Sanders to sign the Previous Agreement by concealing those problems. After complaining about the Previous Vehicle, Vann York fraudulently represented that it would accept a return of the Previous Vehicle; instead, it treated the return of the Previous Vehicle as a trade-in, with negative equity, as part of the transaction constituting the Agreement.

## COUNTERCLAIM

### *Nature of Claim*

1.    Defendant brings this class Counterclaim to challenge the unlawful and harassing practices of First Technology Federal Credit Union ("First Tech") related to its use of a standardized post-repossession notice, which fails to contain the required information, prior to selling vehicles repossessed from consumers. Before selling the vehicles it had repossessed, First Tech was required to advise Mr. Sanders and the class members as to whether or not they could be held liable for a deficiency, if any, after a repossession sale. This important notice, if it had been supplied as required by UCC § 9-614 (N.C. Gen. Stat. § 25-9-614), would have enabled Mr. Sanders and the class members to decide whether to attend the

4

repossession sales, thus helping them to protect their interests. Instead of providing the required notice, however, First Tech instead gave a vague, ambiguous non notice, which told Mr. Sanders and the class members: "If we get less than you owe, you will or will not, as applicable still owe use the difference." It is the practice of First Tech, after providing this non·notice, to pursue deficiency claims in state court collection actions. Mr. Sanders — on behalf of himself, those similarly situated, and fthe general public — seeks injunctive and declaratory relief, restitution, statutory damages, actual damages, costs and expenses.

## Parties

2. Counterclaimant Ronnie Lee Sanders ("Mr. Sanders") is a natural person and a resident and a citizen of the State of North Carolina, who entered into an Agreement to purchase a 2016 Nissan Murano from Vann York Chevrolet Inc., in High Point, North Carolina ("Vann York"), which Agreement was assigned to First Tech, making it a secured party.

3. Counterclaim Defendant First Tech is a federal credit union, headquartered in California, which accepts assignment from around the United States of America of installment contracts for collateralized goods, subject to various laws, including, but not limited to, the Uniform Commercial Code ("UCC").

## Factual Allegations

4. On or about June 19, 2017, Mr. Sanders purchased a used 2016 Nissan Murano (the "Vehicle") from Vann York.

5. Mr. Sanders purchased the vehicle primarily for his personal, family, or household purposes.

6. As part of the transaction, Vann York registered the vehicle with the North Carolina Department of Motor Vehicles and charged Mr. Sanders $52 for such registration on the Agreement.

7. The Vehicle is required to be registered with North Carolina's Division of Motor Vehicles.

8. The Vehicle is a consumer good, as defined by UCC § 9-102(23) (N.C. Gen. Stat. § 25-9-102(23)).

9. The Vehicle is a collateral, as defined by UCC § 9-102(12) (N.C. Gen. Stat. § 25-9-102(12)).

10. As part of the transaction, Mr. Sanders financed the Vehicle purchase and signed Retail Installment Sale Contract Agreement ("the Agreement") a copy of which is attached as **Exhibit B**.

11. Shortly thereafter, in accordance with a contract with First Tech, Van York assigned its rights under the Agreement to First Tech.

12. First Tech accepted the assignment of the Agreement from Vann York and notified Mr. Sanders accordingly.

13. First Tech, as assignee of Vann York, is a "secured party" of the Retail Installment Sale Contract Agreement for the Vehicle, as defined by UCC § 9-102(73) (N.C. Gen. Stat. § 9-102(75)).

6

14. Mr. Sanders did not make any payments to First Tech under the Agreement. Instead, because the Vehicle did not conform to certain representations made by Vann York, Mr. Sanders took the Vehicle back to Vann York.

15. First Tech then repossessed the Vehicle.

16. State laws, including, but not limited to UCC §§ 9-613 and 9-614 (N.C. Gen. Stat. §§ 25-9-613 25-9-614) require that the secured party, following repossession of the collateral, but before disposition of the collateral, provide written notice to the debtor containing certain information and disclosures.

17. In all states and federal districts that have adopted UCC §§ 9-613 and 9-614 (including, but not limited to, North Carolina), the secured party must provide written notice to the debtor containing certain information and disclosures, following repossession and prior to disposition of the collateral.

18. After repossession of the Vehicle, on or about September 28, 2017, First Tech sent via U.S. Mail to Mr. Sanders a letter entitled "NOTICE OF OUR PLAN TO SELL PROPERTY" (the "Notice of Intent"), a copy of which is attached as Exhibit A.

19. Mr. Sanders received the Notice of Intent several days after the date on the letter.

20. Mr. Sanders read the Notice of Intent soon after receiving it.

21. The Notice of Intent indicated that First Tech would sell the Vehicle. It contained the following statement: "If we get less than you owe, you will or will not, as applicable, still owe us the difference."

7

22.     Thus, the Notice of Intent failed to conform to legal requirements for such notice.

23.     After sending the Notice of Intent, First Tech sold the Vehicle.

24.     The Notice of Intent is a standardized form that First Tech uses many times, after a debtor has failed to comply with the terms of a contract involving a collateral.

25.     First Tech's failure to properly advise Mr. Sanders and the class members of their potential liability for a deficiency deprived Mr. Sanders and the class members of their right to oversee the sale of the collateral and to place a bid at the auction for such goods, which resulted in concrete and tangible damage to such persons.

26.     As a result of the foregoing acts and omissions, Mr. Sanders and the class members were dissuaded from attending and overseeing the disposition of the collateral, in a manner in which numerous legislatures have put in place to protect and safeguard debtors. Mr. Sanders and the class members were thus deprived of statutory verification rights which they would otherwise have had under the applicable laws. In other words, Mr. Sanders and the class members suffered an informational injury as a result of being deprived of disclosures to which they were legally entitled, and as a result of being supplied misleading and incomplete information. This injury also created a material risk of financial harm to debtors that the legislatures intended to prevent by enacting various statutes, such as the UCC.

8

27. The acts and omissions of First Tech described above injured Mr. Sanders and the class members in a particularized way, in that First Tech was obligated by laws, including, but not limited to UCC §§ 9-613, 9-614, and 9-616 (N.C. Gen. Stat. §§ 25-9-613, 25-9-614, and 25-9-616) to supply complete and non-misleading information to the debtor specifically, by virtue of the fact that First Tech had repossessed and was attempting to sell the collateral. Moreover, First Tech was obligated by numerous laws to supply full information a description of the debtor's liability for a deficiency upon sale, not to the public at large, but to Mr. Sanders and to the class members specifically, as a pre-condition of selling any collateral.

28. As a result of First Tech's failure to provide proper notification prior to the disposition of the collateral, First Tech is not entitled to pursue any deficiency balance against the debtor.

29. As a result of First Tech's failure to provide proper notification prior to the disposition of the collateral, First Tech is liable for the damages specified under UCC § 9-625 (N.C. Gen. Stat. § 25-9-625).

30. The model statute UCC § 9-625 provides that if a secured party fails to provide proper notification prior to the disposition of collateral that is consumer goods, the secured party is obligated for statutory damages in the amount not less than the credit service charge plus ten percent of the principal amount of the obligation, or the time-price differential plus ten percent of the cash price.

9

31. The following states and territories have adopted the model UCC § 9-625 statutory damage scheme referenced above: Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, District of Columbia , Florida, Georgia, Hawaii, Idaho, Indiana, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming (hereinafter collectively referred to as "the model UCC §9-625 States").

32. Pursuant to the UCC, when a secured creditor fails to comply with the UCC notice requirements, they may be barred from claiming a deficiency balance on the debt.

33. Many states provide that when a secured credit fails to comply with the UCC notice requirements, the secured credit is absolutely barred from claiming a deficiency balance, and the debt is extinguished. These states and territories include Arkansas, California, Connecticut, Delaware, District of Columbia, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Minnesota, Missouri, Montana, Nebraska, New Hampshire, New York, South Carolina, Texas, Utah, Vermont and Wisconsin (hereinafter collectively referred to as "the absolute bar States").

10

34. In the absolute bar States, the secured party may not lawfully seek to collect deficiency balances from borrowers issued defective post repossession notices.

35. Many other states provide that when a secured party fails to comply with the UCC notice requirements, the proceeds of a disposition of collateral are presumed to be equal to the sum of the indebtedness. Thus, it is statutorily presumed that the secured party is due no deficiency after the disposition of the collateral. These states include Alaska, Colorado, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Louisiana, Michigan, Mississippi, Nevada, New Jersey, New Mexico, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, South Dakota, , Tennessee, Virginia, Washington, West Virginia and Wyoming (hereinafter collectively referred to as "the statutory presumption States").

36. To rebut the statutory presumption and lawfully seek to collect deficiency balances from borrowers issued defective post repossession notices in the statutory presumption States, the secured party must establish that the amount of the proceeds that it would have realized is less than the indebtedness.

37. Mr. Sanders is informed and believes, and on that basis alleges, that in the three years preceding the filing of the Complaint herein, First Tech has unlawfully collected or attempted to collect deficiency balances from consumers issued defective post repossession notices, despite the absolute bar to such collection in some instances, and without ever overcoming the statutory presumption barring the collection of such deficiencies in other instances.

11

38.    In addition to the unlawful collection or attempt to collect deficiency balances from consumers, First Tech has maintained a practice and policy of reporting to three national consumer reporting agencies: Equifax, Experian and Trans Union (collectively, "the CRAs") derogatory information concerning the Class representative and the members of the class which failed to account for the absolute bar and/or statutory presumption described herein.

39.    Pursuant to UCC § 9-625(a) (N.C. Gen. Stat. § 25-9-625(a)), if a secured party is not proceeding in accordance with the Article 9 of the UCC, a court may order or restrain collection, enforcement or disposition of collateral.

### *Class Action Allegations*

40.    Pursuant to N.C. Rule of Civil Procedure Rule 23, Mr. Sanders brings this action for himself and on behalf of all other persons, in 2 subclasses, defined as follows:

> A. (i) all natural persons in the model UCC 9-625 States, (ii) to whom First Tech sent—following repossession of the collateral—a Notice in a form substantially similar or materially identical to Exhibit B (iii) that omitted the location of the public auction of such collateral (iv) during the three-year period prior to the filing of this complaint through the date of class certification.

> B. (i) all natural persons in the absolute bar States or in the statutory presumption States, (ii) to whom First Tech sent—following repossession of the collateral—a Notice in a form substantially similar or materially identical to Exhibit B (iii) that omitted the location of the public auction of such collateral (iv) during the three-year period prior to the filing of this complaint through the date of class certification, (v) following which First Tech claimed a deficiency balance against the debtor.

41.     Mr. Sanders is informed and believes that the sizes of the proposed sub-classes exceed fifty each and is so numerous that joinder of all members would be impracticable. Mr. Sanders is unable to state the precise number of members of the proposed class, because that information is in the possession of First Tech.

42.     There is a commonality of questions of law and fact common to the proposed class that predominate over questions affecting only individual members. These questions include, inter alia, whether the Notice of Intent attached as **Exhibit A** violates the requirements of the applicable statutes, and if so, the result of such violation, such as whether First Tech is prohibited from seeking a deficiency from the debtor and/or how much in damages the debtor may be awarded because of the defective notice.

43.     Mr. Sanders's claims are typical of those of the class he seeks to represent.

44.     Mr. Sanders states that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or

13

undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

45. A class action is superior to other methods for the fair and efficient adjudication of this controversy. Because the damages suffered by the individual class members may be relatively small compared to the expense and burden of litigation, it would be impracticable and economically infeasible for class members to seek redress individually. The prosecution of separate actions by the individual class members, even if possible, would create a risk of inconsistent or varying adjudications with respect to individual class members and would establish incompatible standards of conduct for the First Tech. Moreover, because most class members are unaware of their right to know the location of the public sale of their repossessed secured property under the applicable statute, they are unlikely to bring an independent action, and a class action is the only way that these violations can be rectified.

46. Mr. Sanders contemplates that, subject to court approval, written notice shall be given to members of the proposed class, once the class is certified.

47. Injunctive relief is appropriate for the class. Class certification is appropriate because First Tech has acted on grounds generally applicable to the class, making equitable relief appropriate with respect to Mr. Sanders and the class members.

14

## FIRST CAUSE OF ACTION
### *Violations of the Uniform Commercial Code § 9-625*

48.     Mr. Sanders realleges and incorporates by reference the allegations of paragraphs 1 through 47, above.

49.     The Notice of Intent, a copy of which is attached as **Exhibit A**, failed to provide a description of any liability for a deficiency balance after the sale of the collateral, contrary to UCC §§ 9-613 and 9-614 (N.C. Gen. Stat. §§ 25-9-613 and 25-9-614).

50.     This information has been determined by the legislatures as being essential for the debtor's decision-making process with respect to the unpaid balance being claimed by a secured party (First Tech) following repossession of the collateral.

51.     In particular, Mr. Sanders seeks class certification and a declaration that he and members of the class are not liable to First Tech for any deficiency balance following such sale; an injunction prohibiting First Tech from attempting to collect, directly or indirectly, any deficiency balance and requiring First Tech to refund any claimed deficiency balance it has collected from the class; and injunction requiring First Tech to remove any adverse credit information which may have been wrongfully reported on the consumer credit reports of the Class members; an award of statutory damages against First Tech of not less than the credit service charge plus 10% of the principal amount of the obligation, pursuant to UCC § 9-625; pre

15

judgment interest to the extent permitted by law; and such other and further relief the Court deems just and proper.

## SECOND CAUSE OF ACTION
### *Declaratory Relief*

52.    Mr. Sanders realleges and incorporates by reference the allegations of paragraphs 1 through 51, above.

53.    An actual controversy has arisen between Mr. Sanders and the members of the proposed class, on the one hand, and First Tech, on the other hand, as to their respective rights, remedies and obligations. Specifically, Mr. Sanders alleges that the acts and practices of First Tech as alleged, above, violate the UCC and are unlawful, unfair, and/or fraudulent, and that Mr. Sanders and members of the class are therefore not liable, and never were liable, for any balances or the excessive balances represented. It is believed that First Tech contends or will contend to the contrary.

54.    Accordingly, Mr. Sanders seeks a declaration as to the respective rights, remedies, and obligations of the parties.

## DEMAND FOR JURY TRIAL

Please take notice that Defendant/Counterclaimant demands a trial by jury on all claims asserted by Plaintiff/Counterclaim Defendant and all counterclaims asserted by Defendant/Counterclaimant.

16

## DEMAND FOR JUDGMENT

WHEREFORE, Defendant/Counterclaimant Ronnie Lee Sanders prays as follows:

A. For an order dismissing Plaintiff's Complaint in its entirety;

B. For an order certifying a class as described above;

C. For an order and judgment finding and declaring that First Tech's acts and practices as challenged herein are unlawful, unfair and fraudulent, including but not limited to an order restraining First Tech from any attempt to collect or enforce any claimed deficiency balance owed by Defendant or any Class Member;

D. For an order and judgment preliminarily and permanently enjoining First Tech from engaging in the practices challenged herein and from being able to collect any such amounts, whether by reporting such amounts on the affected debtor's credit reports, reporting a deficiency balance to any credit reporting agency, assigning or transferring such purported deficiency balance to any third party (such as a debt buyer or other debt collection agency), filing a lawsuit against such debtor for the deficiency balance, or entry of a default judgment against such debtor, and requiring First Tech to vacate any default judgment it has obtained against such debtor and refund any moneys collected thereon.

E. For an order of restitution in an amount to be determined at trial to restore to all affected debtors, in interest, all money acquired by means of First Tech's unlawful, unfair and fraudulent practices, which amount is at least equal to all sums collected for alleged deficiency balances, and all interest and profit earned thereon;

F. For an award of damages pursuant to UCC § 9-625 (N.C. Gen. Stat. § 25-9-625) and, if the collateral is a

17

consumer good, damages of not less than the credit service charge plus 10% of the principal amount of the obligation;

G. For pre-judgment interest to the extent permitted by law; and

H. For such other relief as the court may deem just and proper.

This the 3rd day of August, 2018.

LAW OFFICE OF JONATHAN R MILLER, PLLC, d/b/a
SALEM COMMUNITY LAW OFFICE

Jonathan R. Miller, Esq.
N.C. State Bar No. 48224
301 N. Main Street, Suite 2412
Winston-Salem, NC 27101
Telephone: 336-837-4437
Facsimile: 336-837-4436
Email: jmiller@salemcommunitylaw.com

Thomas R. Breeden, Esq.
(*pro hac vice* motion to be submitted)
10326 Lomond Drive
Manassas, VA 20109
Telephone: (703) 361-9277
Facsimile: (703) 257-2259
Email: trb@tbreedenlaw.com

Brian L. Bromberg, Esq.
(*pro hac vice* motion to be submitted)
26 Broadway, 21st Floor
New York, NY 10004
Telephone: (212) 248-7906
Facsimile: (212) 248-7908
Email: brian@bromberglawoffice.com

*COUNSEL FOR DEFENDANT/COUNTERCLAIMANT
RONNIE LEE SANDERS*

18

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

IN THE GENERAL COURT OF JUSTICE
DISTRICT COURT DIVISION
No. 17 CVD 4641

---

FIRST TECHNOLOGY FEDERAL
CREDIT UNION,

     Plaintiff/Counterclaim Defendant.

          v.

RONNIE LEE SANDERS,

     Defendant/Counterclaimant.

)
)
)
)
)
)
)
)
)
)
)
)

---

## CERTIFICATE OF SERVICE

This is to certify that I have this day served: Cara B. Williams, Esq. of Smith Debnam Narron Drake Saintsing & Myers, LLP, P.O. Box 26268, Raleigh, NC 27611-6268, with a copy of this Answer, with Counterclaims, by depositing the same in the United States mail in a properly addressed wrapper with adequate postage, in the manner prescribed by Rule 5 of the North Carolina Rules of Civil Procedure.

This the 3rd day of August, 2018

_____
Jonathan R. Miller
Attorney for Defendant/Counterclaimant Ronnie Lee Sanders
301 N. Main Street, Suite 2412
Winston-Salem, NC 27101
Telephone: 336-837-4437
Facsimile: 336-837-4436
N.C. State Bar No. 48224

19

# Exhibit A



**First** ◆ **Tech**
federal credit union

### NOTICE OF INTENT TO SELL PROPERTY

09/28/2017

Ronnie Sanders
1509 Caldwell St
Greensboro, NC 27406-2388

RE: 2016 Nissan Murano 5N1AZ2MH0GN118175 "Vehicle"
    Account Number: 9330901449

Dear Ronnie Sanders:

First Tech Federal Credit Union took possession of the Vehicle specified above. Possession was taken on or about, 09/28/2017 because of your failure to meet the terms of the loan and security agreement executed by you on 06/19/2017.

Please be advised that subject to your right of redemption as outlined in the next paragraphs we will sell the Vehicle at a private sale sometime after 10/19/2017. A sale could include a lease or license.

The money that we get from the sale, after paying our costs, will reduce the amount you owe. If we get less than you owe, you will or will not, as applicable, still owe us the difference. If we get more than you owe, you will get the extra money, unless we must pay it to someone else.

You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due amount), including our expenses. The amount required to redeem the Vehicle as of 09/28/2017, is as follows (this amount does not include costs of sale):

| | |
|---|---|
| Principal balance: | $32,994.18 |
| Interest through 09/28/2017: | $500.32 |
| Unpaid late fees: | $12.00 |
| Other, Transport: | $100.00 |
| Repossession expenses (estimated): | $225.00 |
| Storage ($25.00 per day): | $50.00 |
| Attorney fees: | $0.00 |
| Legal expenses: | $0.00 |
| | |
| **Total Outstanding Due** | $33,881.50 |



Corporate Headquarters | 1335 Terra Bella Avenue | Mountain View, CA 94043-1335 | Correspondence | PO Box 2100 | Beaverton, OR 97075-2100
**855.855.8808 | firsttechfed.com**






To learn the exact amount you must pay after 09/28/2017 call us at toll free at (855) 855-8805 extension 4661.

If you want us to explain to you in writing how we have figured the amount that you owe, or information about the sale you may call us toll free at (855) 855-8805 extension 4661 or write us at First Tech Federal Credit Union; Attn: Special Assets Management, P.O. Box 2100, Beaverton, OR 97075 and request a written explanation.

We will not charge you for the explanation if we sent you another written explanation of the amount you owe us within the last six (6) months. If you want more information about the sale you can call us toll free at (855) 855-8805 extension 4661 or write us at First Tech Federal Credit Union; Attn: Special Assets Management, P.O. Box 2100, Beaverton OR 97075.

We may report information about your account to the credit bureau. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

Sincerely,

Julee Dunn
First Tech Federal Credit Union





Corporate Headquarters | 1335 Terra Bella Avenue | Mountain View, CA 94043-1833 | Correspondence | PO Box 2100 | Beaverton, OR 97075-2100
855.855.8805 | firsttechfed.com

# Exhibit B

RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE
THIS IS A CONSUMER CREDIT DOCUMENT
(WITH ARBITRATION PROVISION)

[illegible]

FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
| --- | --- | --- | --- | --- |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |

Your Payment Schedule Will Be:

[illegible]

ITEMIZATION OF AMOUNT FINANCED

[illegible]

Optional Credit Insurance

[illegible]

Other Optional Insurance

[illegible]

THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE. WITHOUT SUCH INSURANCE YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.

[illegible]

NO COOLING OFF PERIOD

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

[illegible]

See back for other important agreements.

NOTICE TO RETAIL BUYER: Do not sign this contract in blank. You are entitled to a copy of the contract at the time you sign. Keep it to protect your legal rights.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read both sides of this contract, including the arbitration provision on the reverse side, before signing below. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X [signature] Date [illegible] Co-Buyer Signs X [illegible] Date [illegible]

[illegible]

Other owner signs here X [illegible] [signature]

[illegible]

[signature] [signature]

LAW [illegible]