# EXHIBIT "B"

STATE OF NORTH CAROLINA    IN THE GENERAL COURT OF JUSTICE
DISTRICT COURT DIVISION
COUNTY OF GUILFORD    No. 18 CVD 4641

FIRST TECHNOLOGY FEDERAL   )
CREDIT UNION,              )
                           )
   Plaintiff/Counterclaim Defendant, )   CLASS ACTION
                           )
   v.                      )   JURY TRIAL DEMANDED
                           )
RONNIE LEE SANDERS,        )
                           )
   Defendant/Counterclaimant. )

## DEFENDANT/COUNTERCLAIMANT RONNIE LEE SANDERS' AFFIDAVIT IN OPPOSITION TO MOTION TO DISMISS OR, ALTERNATIVELY, MOTION TO STAY PENDING ARBITRATION

STATE OF NORTH CAROLINA )
                        )
COUNTY OF FORSYTH       )

Defendant/Counterclaimant RONNIE LEE SANDERS, first being duly sworn, deposes and says:

1.    I am the Defendant/Counterclaimant in the above-captioned action, and I am therefore fully knowledgeable of the facts and circumstances concerning this case.

2.    I am making this affidavit in opposition of to the Motion by First Technology Federal Credit Union ("First Tech") to either dismiss my counterclaim or stay the Court's consideration of my counterclaim while it is sent to arbitration.

1

3. This court case concerns my purchase of a 2016 Nissan Murano from Vann York Chevrolet, Inc. ("Vann York") on June 19, 2017.

4. The main point I want to make in this affidavit is that I gave the Murano back, after I discovered that it did not have all of the features that Vann York promised it would have. My lawyer tells me that, in legal terms, this is called "revoking acceptance."

5. Actually, this story really begins two weeks before I purchased the Murano, when I purchased a 2011 Ford Edge from the same dealership, Vann York.

6. I started having problems with the Edge's transmission and power system as soon as I drove it off the lot.

7. Specifically, when I tried to shift the transmission, the whole vehicle started to jerk. Also, the power windows and the power sunroof did not work, and the rear backup camera did not work properly.

8. While I did test drive the Edge before I signed the papers, I believe that Vann York intentionally hid the problems with the transmission and the power system. Before the test drive began, a Vann York employee had already pulled the Edge out of its parking spot and pointed it toward the road. Also, the Vann York employee had put the air conditioning on full-blast, so I never thought to roll down the windows.

9. I called Vann York several times to complain about the problems. Vann York told me they would fix the Edge, but kept on putting me off, saying that the parts hadn't come in yet.

10. Finally, about two weeks after I bought it, I took the Edge to Vann York. When I got there, Vann York told me that they hadn't even ordered parts for the Edge. Instead, Vann York said they would take the Edge back and sell me a different vehicle, which turned out to be the Murano.

11. Vann York led me to believe that it would be canceling the Edge purchase, and selling me a Murano instead.

12. I did not test-drive the Murano, but Vann York promised me that it had no mechanical problems, and that it was fully loaded.

13. It wasn't until much later that I realized that what Vann York did was to treat the Ford Edge as a trade-in. Instead of canceling the sale of the Edge, Vann York added all the negative equity from the loan on the Edge into another loan for the Murano (this was the loan that was later given to First Tech).

14. As soon as got into the Murano to drive it home, I knew that Vann York had tricked me a second time, because the Murano had the exact same problems with the transmission and the power system, and it was not fully loaded.

15. That same day I made a phone call to Vann York to tell them I did not want the Murano because it did not match up with what Vann York agreed to sell me. Vann York refused to take it back.

16. I also called First Tech that day, telling them not to send any money to Vann York, because they had misled me about the car and I was going to cancel my purchase.

3

17. Over the next several days, I called First Tech several times, and each time, I told the First Tech employee I talked to about the problems with the Murano, that I was going to cancel my purchase and take back the Murano, and that First Tech should not send any money to Vann York.

18. Vann York ignored my complaints. The First Tech employees were courteous, but they never acknowledged that I had a right to cancel the purchase, or gave me instructions on how to do that.

19. Eventually, I took the Murano back to Vann York and left it in the parking lot.

20. During a telephone call, I told a First Tech employee that I had left the Murano at Vann York – in fact, that is how First Tech knew where the Murano was so they could take possession of it.

21. The bottom line is that the only reason I took the Murano in the first place is because Vann York told me that it had no problems and it was fully loaded. Once I got into the Murano, I knew that Vann York had misled me. I immediately told Vann York and First Tech that I was giving the Murano back and canceling my purchase. I took the Murano back to the place where I had purchased it, and I told Vann York and First Tech where I left it.

22. There is no contract between me and Vann York or between me and First Tech.

23. For these reasons, I respectfully ask the Court to deny First Tech's motion.

_____
Ronnie Lee Sanders

Subscribed before me on the 27th day of November, 2018.

_____
Jonathan R. Miller
Notary Public, Forsyth Co., NC

My commission expires Jan 4, 2022.