UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

RONNIE LEE SANDERS,            )
                               )
        Plaintiff,              )
                               )
    v.                          )      Case No. 19-CV-410
                               )
SMITH DEBNAM NARRON DRAKE       )
SAINSTING & MYERS, LLP and      )
FIRST TECHNOLOGY FEDERAL        )
CREDIT UNION,                   )
                               )
        Defendants.             )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court on Motions to Dismiss Plaintiff's Amended Complaint filed by Defendant First Technology Federal Credit Union ("First Tech") [Doc. #14] and Defendant Smith Debnam Narron Drake Sainsting & Myers, LLP ("Smith Debnam") [Doc. #17]. As further set out below, it is recommended that the Motions to Dismiss be denied.

### I.      FACTS, CLAIMS, AND PROCEDURAL HISTORY

Plaintiff's Amended Complaint raises claims under the Fair Debt Collection Practices Act and the North Carolina Debt Collection Act, arising out of Plaintiff's attempted purchase of a vehicle in June 2017 from Vann York Chevrolet, Inc. (Am. Compl. [Doc. #3] at 3–4.) Plaintiff initially purchased a Ford Edge but immediately began having problems with the Edge and ultimately returned the car to the dealership. (Id.) Vann York accepted the Edge and sold Plaintiff a 2016 Nissan Murano in its place. (Id. at 4.) Vann York assigned the loan Plaintiff took out on the Murano to Defendant First Tech. (Id.) Plaintiff alleges that he

immediately discovered that the Murano also had transmission and power system problems, and that he called Vann York that day to say he wanted to return the car. He then called First Tech, told them not to send any money to Vann York, and said he was going to cancel his purchase. (Id. at 5.) Plaintiff alleges that he made several calls to this effect to First Tech before ultimately driving the Murano back to Vann York and leaving it in their parking lot. (Id.)

On September 20, 2017, First Tech sent Plaintiff a collection letter stating that his account was "seriously delinquent" and demanding payment. (Id. at 6.) First Tech then took possession of the Murano, presumably from the dealership. On September 28, 2017, First Tech sent Plaintiff a second letter notifying Plaintiff of their intent to sell the vehicle and stating that if the sale realized less than the amount due, he could be liable for the difference. (Id.) Plaintiff alleges that First Tech treated the Murano as collateral it had repossessed under Article 9 of the Uniform Commercial Code, and sold the Murano at a private sale. On November 2, 2017, First Tech sent Plaintiff a third letter stating that he was still liable for a post-sale shortfall of $11,131.23, and threatening "further collection measures." (Id.)

Several months later, in April 2018, First Tech—through its attorneys, Defendant Smith Debnam—filed a debt collection suit in North Carolina state court to collect $11,829.41 plus interest and attorney's fees. (Id.) Plaintiff defended that claim and brought a counterclaim against First Tech under Article 9 of the Uniform Commercial Code, specifically contending that the September 28, 2017 collection letter failed to contain the required information under N.C. Gen. Stat. § 25-9-614 prior to selling vehicles repossessed from consumers. (Id. at 6–7; First Tech's Br., Ex. A [Doc. #16–1] at 5.) First Tech moved to compel arbitration, and in

response, Plaintiff argued that because he had revoked acceptance of the Murano and terminated the purchase contract, the contract's arbitration clause was not binding on him. At a hearing on the motion to compel arbitration, counsel for First Tech conceded that Plaintiff had revoked acceptance of the Murano, and based on that concession, the trial court dismissed both First Tech's collection action and Plaintiff's Article 9 counterclaims. (Am. Compl. at 7.)

Plaintiff appealed the dismissal of his counterclaims, and the North Carolina Court of Appeals issued a decision affirming the dismissal of the counterclaims. See First Tech. Fed. Credit Union v. Sanders, No. COA19–187, 2019 WL 4168919 (N.C. App. Sept. 3, 2019). In reaching that conclusion, the state court set out the matter as follows:

> The Credit Union filed a motion to dismiss Defendant's counterclaims . . . [and at] the hearing, the parties stipulated that the installment agreement was not a valid and binding contract.
>
> On the basis that there existed no valid and binding contract between the parties, the trial court concluded that the Credit Union's complaint for deficiency judgment failed as a matter of law. The trial court also concluded that Defendant's counterclaims failed as a matter of law, in that, absent a valid and binding security agreement, the Credit Union was not a "secured party" subject to enforcement of the UCC's notice provisions. Accordingly, the trial court dismissed with prejudice all claims between the parties. Defendant timely appealed from the trial court's order dismissing his counterclaims.
> . . . .
>
> The notice requirements under Article 9 apply only to secured parties. See N.C. Gen. Stat. § 25-9-611(b). . . . [A] plain reading of the applicable definitions quite plainly reveals that there can be no "secured party" in the absence of an enforceable security interest, and where the parties' security agreement is canceled, so too is the security interest that was created thereunder. . . .
>
> Accordingly, in that the parties conceded that the only security agreement between them was no longer valid and enforceable, the trial court correctly concluded that the Credit Union was not a "secured party" subject to liability for its failure to comply with the notice provisions under Article 9. . . .

First Tech. Fed. Credit Union, 2019 WL 4168919, at *1–3.

3

In April 2019, while the appeal of his Article 9 counterclaims was pending in state court, Plaintiff filed this suit against Smith Debnam. In his original Complaint [Doc. #1], Plaintiff named only Smith Debnam, not First Tech, and asserted a single claim for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., based on the filing of the state court complaint. Plaintiff alleged that the state court complaint falsely stated that Plaintiff owed an $11,829.41 debt, was a false representation of the character, amount, and legal status of a debt, was an action that Smith Debnam was not legally permitted to take, and was a false representation and deceptive means of attempting to collect a debt.

Nothing further was filed, and on October 10, 2019, nearly six months after the Complaint was filed, the Clerk's Office sent Plaintiff a letter noting his failure to make timely service pursuant to Federal Rule of Civil Procedure 4(m), and the resultant risk of having his case dismissed [Doc. #2]. On October 24, 2019, Plaintiff responded to this notice by filing a Motion for Extension of Time to make service under Rule 4(m) [Doc. #4]. The Court entered an Order [Doc. #5], granting Plaintiff's motion, and allowing him until November 7, 2019 to make service. Plaintiff also filed an Amended Complaint [Doc. #3] on October 24, 2019, keeping the same FDCPA claim against Smith Debnam, and adding a state law claim for violations of the North Carolina Debt Collection Act, N.C. Gen. Stat. § 75–50 et seq., against First Tech. Specifically, Plaintiff alleges that First Tech's letters were a "fraudulent, deceptive, [and] misleading representation" prohibited by N.C. Gen. Stat. § 75-54 in that the letters stated that Plaintiff owed and was delinquent in payments on a debt that, "as First Tech later admitted, had ceased to exist." (Am. Compl. at 8.) Plaintiff contends that the letters were also an "unconscionable means" of attempting to collect a debt prohibited by § 75-55(2), in that

4

"First Tech was not legally entitled to collect the fake debt on which it was demanding payment," and that the act of sending the letter was also an "unfair threat" prohibited by § 75-51(3), in that the letters threatened "legal action" to "recover a nonexistent debt," and "threatened to make false accusations concerning Mr. Sanders to credit reporting agencies." (Am. Compl. at 8–10.)

Both Defendants now move to dismiss the Amended Complaint. Smith Debnam argues that the claims against it should be dismissed due to insufficient service of process, and that the claims are barred by the statute of limitations based on the date of the filing of the Amended Complaint. First Tech argues that this Court lacks subject matter jurisdiction to hear the state law claims, and that in any event Plaintiff's claim is precluded by the doctrine of res judicata. The Court considers these motions in turn.

## II. DISCUSSION

### A. Smith Debnam's Motion to Dismiss

Smith Debnam first argues that the claims against it should be dismissed because Mr. Sanders failed to comply with Federal Rule of Civil Procedure 4(m)'s timeline for service. (Smith Debnam's Br. [Doc. #18].) Specifically, Smith Debnam argues that Plaintiff failed to serve the complaint within 90 days as required by Rule 4(m). Smith Debnam acknowledges that this Court granted Plaintiff's request for an extension of time to make service. (Id. at 5 n.2.) It does not argue that Plaintiff failed to comply with that extended deadline. Instead, Smith Debnam argues that the time for serving the complaint should not have been extended because Plaintiff failed to establish good cause. (Id. at 5.) In asking for the Court to reconsider, Smith Debnam suggests that considerations such as "frivolousness," "motivation,"

"objective unreasonableness," and "the need in particular circumstances to advance consideration of compensation and deterrence" be taken into account prior to granting the motion. (Smith Debnam's Reply [Doc. #24] at 2–3 (quoting <u>Pickens v. Intercmty. Agency</u>, No. CIV. A. 96–8415, 1997 WL 727604, at *7 (E.D. Pa. Nov. 21, 1997)).

In considering this motion, the Court begins with the text of Federal Rule of Civil Procedure 4(m). If a defendant is not served within 90 days, Rule 4(m) lays out a clear procedure for courts to follow. Specifically,

> [i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Under this Rule, the Court has discretion to grant an extension "even if there is no good cause shown." <u>Henderson v. United States</u>, 517 U.S. 654, 662 (1996) (citations omitted). In <u>DiPaulo v. Potter</u>, 570 F. Supp. 2d 802 (M.D.N.C. 2008), the Court laid out the history of the amendment to Rule 4(m) in detail, and explained:

> Rule 4(m) now gives district courts discretion to grant extensions of time for service of process without a showing of good cause but requires them to grant extensions upon a showing of good cause. See, e.g., <u>United States v. McLaughlin</u>, 470 F.3d 698, 700 (7th Cir. 2006) ("if good cause for the delay is shown, the court must extend the time for service, while if good cause is not shown, the court has a choice between dismissing the suit and giving the plaintiff more time"); <u>Lindsey v. U.S. R.R. Ret. Bd.</u>, 101 F.3d 444, 446 (5th Cir. 1996) (holding dismissal is improper if plaintiff shows good cause for why service is not made within 120 days of the filing of the complaint).

<u>DiPaulo</u>, 570 F. Supp. 2d at 807. Here, the Court followed that process, considered Plaintiff's submission requesting an extension of time, and in its discretion concluded that an extension of time should be granted. The request did not impact or delay other proceedings in the case

6

in this Court, and the request was not frivolous or objectively unreasonable. The Court concludes that there is no reason to revisit that decision now. To the extent Defendant Smith Debnam in the Reply raises for the first time additional contentions regarding the strength of the claims, those are matters more appropriately addressed on dispositive motions, not on the present request to reconsider an extension for service of process under Rule 4(m). Because the procedure laid out in Rule 4(m) was followed in granting the initial motion for extension, and because there is no dispute that service was properly made within the time period as extended, Defendant Smith Debnam's motion to dismiss based on insufficient service of process should be denied.

Smith Debnam also contends that the Amended Complaint should be dismissed for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). However, Smith Debnam does not contend that Plaintiff's allegations, if proven, would not state a valid claim for relief. Instead, Defendant argues that Plaintiff's complaint is time-barred because the FDCPA contains a one-year statute of limitations, and Plaintiff's Amended Complaint filed in October missed that deadline by several months. (Smith Debnam's Br. at 7); see 15 U.S.C. § 1692k(d) (2018). "The raising of the statute of limitations as a bar to plaintiffs' cause of action constitutes an affirmative defense and may be raised by motion pursuant to Fed.R.Civ.P. 12(b)(6), if the time bar is apparent on the face of the complaint." Dean v. Pilgrim's Pride Corp., 395 F.3d 471, 474 (4th Cir. 2005).

Notably, Defendant agrees that the original Complaint, filed on April 16, 2019, was timely filed, and the claims raised there would not be barred by the statute of limitations. (Smith Debnam's Br. at 6–7.) However, Defendant contends that the Court should look only at the

7

Amended Complaint filed on October 24, 2019. In support of its position, Smith Debnam notes that the October Complaint does not reference the April Complaint, does not explicitly invoke the Rule 15(a) process for amending a complaint prior to trial, does not purport to amend the April Complaint, and was the only Complaint ever served. (Id. at 6.) In response, Plaintiff notes that the October Complaint is properly viewed as an amendment because it is unmodified as to Smith Debnam from the April Complaint and it is not necessary to mention Rule 15(a) in order to effectively amend a complaint. (Pls.' Opp'n Br. [Doc. #22] at 8–9.)

As discussed above, the Court has declined to revisit its prior decision under Rule 4(m) extending Plaintiff's time to serve process. Because his case was not dismissed in October, Plaintiff still had time to amend his complaint as a matter of course pursuant to Rule 15(a)(1). There is no reason to treat Plaintiff's October Complaint—filed under the same case number and listing out the same claims as to Smith Debnam—as anything other than an amendment to his timely filed April Complaint. Because the Amended Complaint simply re-states the same claims against Smith Debnam as the original Complaint, there is also no need to further consider whether the Amended Complaint "relates back" to the date of the original Complaint under Rule 15(c). In sum, there is no dispute that the original Complaint asserted the FDCPA claim against Smith Debnam and was filed within the relevant statute of limitations, Plaintiff filed an Amended Complaint as of right under Rule 15(a)(1), the time for service was extended under Rule 4(m), and Plaintiff served the Amended Complaint within the extended time. Therefore, Smith Debnam's Motion to Dismiss based on the statute of limitations should be denied.

## B. First Tech's Motion to Dismiss

Defendant First Tech moves to dismiss all claims against it based on a lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and based on application of res judicata. The Court considers these contentions in turn.

With respect to the alleged lack of subject matter jurisdiction, Plaintiff here asserts federal claims against Defendant Smith Debnam and state law claims against Defendant First Tech, and Plaintiff contends that this court should exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367, because his state law claims against First Tech are "so related to his FDCPA claims that they form part of the same case or controversy." (Am. Compl. at 3.) In its Motion to Dismiss, First Tech contends that all of the claims against it are state law claims and that the state law claims against it do not share a "common nucleus of operative facts" with the federal claims against Smith Debnam. (First Tech's Br. [Doc. #16] at 7–8.) Defendant also notes that if the claims against Smith Debnam are dismissed, there would be no basis for exercising jurisdiction over the state law claims.

In considering these contentions, the Court notes first that to the extent First Tech's Motion is based on the possible dismissal of the claims against Smith Debnam, this Court has recommended that Smith Debnam's Motion to Dismiss should be denied, as discussed at length above. In light of the federal law claims against Smith Debnam, 28 U.S.C. § 1367(a) extends supplemental jurisdiction to "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution" and "[s]uch supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." See Exxon Mobil

Corp. v. Allapatah Servs., Inc., 545 U.S. 546, 557 (2005). The key question is thus whether the claims against First Tech for violations of the North Carolina Debt Collection Act share a common nucleus of operative fact with the claims against Smith Debnam for violations of the federal Fair Debt Collection Practices Act, such that Plaintiff would "ordinarily be expected to try them all in one judicial proceeding." See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

Here, both the state and federal claims stem from First Tech's attempt to collect a disputed, voided debt on a vehicle loan. As First Tech points out in its Brief, some of the specific instances Plaintiff complains of are distinct between the parties. (First Tech's Br. at 7–8.) The state law claims against First Tech involve a series of debt collection letters that were sent in the fall of 2017. (Am. Compl. at 8–9.) The federal claims against Smith Debnam involve a lawsuit filed to collect the same debt in spring of 2018. (Id. at 7–8.) However, both claims involve the same disputed debt. Furthermore, First Tech was involved in both the letters, which it sent, and the debt collection suit, in which First Tech was the named plaintiff. (Am. Compl., Ex. D [Doc. #3–4] at 2.) The core of Mr. Sanders' complaints against both Defendants is that the debt they were attempting to collect on, whether by letter or by lawsuit, did not exist. (Am. Compl. at 7–9.) As such, both claims will require the same factual findings as to the status of the debt, and the claims derive from a common nucleus of operative fact. See, e.g., Esmailzadegan v. Ventura Greens at Emerald Dunes Condo. Ass'n, No. 17-81040, 2018 WL 3699343 (S.D. Fla. Apr. 25, 2018); Montoya v. Spinella & Assoc., No. 3:13-CV-131, 2013 WL 5203780 (D. Conn. Sept. 13, 2013).

First Tech next moves to dismiss based on the doctrine of res judicata, or claim preclusion. In its Brief in support of that request, First Tech contends that Plaintiff's claim here, based on the debt collection letters sent in the fall of 2017, "could and should have been brought forward" in the prior North Carolina state court case between these two parties. (See First Tech's Br. at 8–9 (citing Johnson v. Bank of America, N.A., 225 N.C. App. 265, 736 S.E.2d 648 (2013) (unpublished disposition))). Specifically, First Tech contends that "some of the very same letters" were at issue in the first suit, and that "[i]f, as Sanders contended in the Affidavit, the RISC [Agreement] was void based on the actions of Vann York, Sanders 'in the exercise of reasonable diligence could and should have brought forward' claims related to alleged improprieties in trying to enforce that contract, including collecting on any debt arising therefrom." (Id. at 9.)

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, state court judgments are entitled to the "same full faith and credit" in federal courts as would be given in that state's courts. Thus, in considering the preclusive effect of a state court judgment, federal courts must apply the res judicata principles of the state that entered the putative preclusive judgment, which in this case is North Carolina. Kremer v. Chem. Constr. Corp., 456 U.S. 461, 466 (1982). In North Carolina, res judicata requires: (1) a final judgment on the merits in an earlier lawsuit; (2) an identity of the cause of action in both cases; and (3) an identity of parties or their privies in both actions. Lawson v. Toney, 169 F. Supp. 2d 456, 462 (M.D.N.C. 2001) (citing Thomas M. McInnis & Assocs. v. Hall, 318 N.C. 421, 428, 349 S.E.2d 552, 556 (1986)).

Here, Plaintiff does not appear to contest that the first and third requirements are met, and instead focuses on whether the two cases share "an identity of the cause of action." (Pls.'
11

Opp. Br. [Doc. #19] at 8–11.) The doctrine of res judicata in North Carolina "precludes a second suit based on the same cause of action." Whitacre P'ship v. Biosignia, Inc., 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004). "The doctrine prevents the relitigation of all matters . . . that were or should have been adjudicated in the prior action." Id. (quotation omitted). "[A]ll damages incurred as a result of a *single wrong* must be recovered in one lawsuit." Lawson, 169 F. Supp. 2d at 463 (citations omitted). A prior case in this District considered at length the law of res judicata in North Carolina with respect to whether there is "an identity of the cause of action in both the earlier and the later suit":

> Under the modern trend, many state and federal courts, including the Fourth Circuit, apply a broad "transactional" test regarding the "identity of claims" issue, which asks whether "the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." See Keith v. Aldridge, 900 F.2d 736, 740 (4th Cir. 1990). Under this broad test, claim preclusion prevents the "litigation by the plaintiff in a subsequent action of claims 'with respect to all or any part of the transaction, or series of connected transactions, out of which the [first] action arose.'" Harnett v. Billman, 800 F.2d 1308, 1314 (4th Cir. 1986) (quoting Restatement (Second) of Judgments § 24(1) (1982)). Thus, mere differences in legal theories of a claim or defense, or in remedies sought, or in evidence produced do not create "different" claims, and res judicata will bar a subsequent lawsuit if its claims arise out of the same core of operative facts that led to the initial lawsuit. See In re Varat Enters., Inc., 81 F.3d 1310, 1316 (4th Cir. 1996).
>
> **North Carolina courts have employed a "cautious and flexible adoption" of the "transactional" test and construe the res judicata bar more narrowly than most federal and state courts.** See Davenport v. North Carolina Dep't of Transp., 3 F.3d 89, 95 (4th Cir. 1993) (discussing North Carolina's tendency to apply res judicata more restrictively than federal courts); Lawson v. Toney, 169 F. Supp. 2d 456, 463 (M.D.N.C. 2001) (stating that North Carolina courts have not conclusively adopted the transactional test). **In other words, North Carolina courts have allowed lawsuits to go forward where other courts would have found them to be clearly barred by res judicata.**

Davis v. Durham v. Mental Health Developmental Disabilities Substance Abuse Area Auth., 320 F. Supp. 2d 378, 391 (M.D.N.C. 2004) (emphasis added).

12

Further, in a recent decision, the North Carolina Supreme Court articulated a narrow construction of res judicata, specifically with regard to the test for determining which "matters" are considered to be barred by a prior action. Intersal, Inc. v. Hamilton, 373 N.C. 89, 107, 834 S.E. 2d 404, 417 (2019). In Intersal, the plaintiff first challenged a permit denial by the Department of Natural and Cultural Resources (DNCR) in an administrative proceeding. As part of the challenge, the plaintiff argued that the denial violated a 2013 contractual agreement between it and DNCR. The plaintiff did not succeed in challenging the permit denial, and after appeal and final judgment in that case, the plaintiff asserted a breach of contract claim against DNCR in a separate case, arguing that the denial of the permit constituted a breach of the 2013 agreement. The North Carolina Supreme Court held that the later action was <u>not</u> barred by res judicata, setting out the following analysis:

> As an initial matter, "[t]he fact that the original claim arose in a quasi-judicial administrative hearing" does not preclude the applicability of res judicata. See Batch v. Town of Chapel Hill, 326 N.C. 1, 14–15, 387 S.E.2d 655, 664 (1990). "Under the doctrine of res judicata or 'claim preclusion,' a final judgment on the merits in one action precludes a second suit based on the same cause of action between the same parties or their privies." Whitacre P'ship v. Biosignia, Inc., 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004) (quoting State ex rel. Tucker v. Frinzi, 344 N.C. 411, 413, 474 S.E.2d 127, 128 (1996); Hales v. North Carolina Ins. Guar. Ass'n, 337 N.C. 329, 333, 445 S.E.2d 590, 594 (1994)). Further, "[t]he doctrine prevents the relitigation of 'all matters ... that were or should have been adjudicated in the prior action.'" Id. at 15, 591 S.E.2d at 880 (quoting Thomas M. McInnis & Assocs. v. Hall, 318 N.C. 421, 428, 349 S.E.2d 552, 556 (1986)). However, neither Whitacre nor McInnis provide guidance on what "matters," are considered to be barred by a prior action. See id. at 15, 591 S.E.2d at 880 (ultimately applying the separate doctrine of judicial estoppel); see also McInnis, 318 N.C. at 428, 349 S.E.2d at 556 (holding that the doctrine of res judicata was inapplicable in that action).
>
> Our decision in Bockweg v. Anderson, 333 N.C. 486, 428 S.E.2d 157 (1993), provides guidance on what matters are barred by res judicata. Specifically, in Bockweg, we stated that "[w]hile it is true that a 'judgment is conclusive as to all issues raised by the pleadings,' ... the judgment is not conclusive as to issues

13

not raised by the pleadings which serve as the basis for the judgment." Bockweg, 333 N.C. at 492, 428 S.E.2d at 161–62 (citation omitted). In Tyler v. Capehart, we stated that a

> judgment is decisive of the points raised by the pleadings, or which might properly be predicated upon them. ...[but] does not embrace any matters which might have been brought into the litigation, or any causes of action which the plaintiff might have joined, but which in fact are neither joined nor embraced by the pleadings.

125 N.C. 64, 70, 34 S.E. 108, 109 (1899).

Here, there is no dispute that the trial court's order was (1) "a final judgment"; and (2) that the final judgment was "between the same parties or their privies." Whitacre, 358 N.C. at 15, 591 S.E.2d at 880. The issues are whether the final judgment was "on the merits" and whether that judgment concerned the "same cause of action"—namely plaintiff's breach of contract claim arising from DNCR's denial of plaintiff's permit to search for *El Salvador*. Bockweg, 333 N.C. at 492–93, 428 S.E.2d at 162 (citing and quoting Tyler, 125 N.C. at 70, 34 S.E. at 109).

We conclude that the trial court's order was not a final judgment on the merits of plaintiff's breach of contract claim because that claim is a separate cause of action which was not raised by plaintiff's pleadings before the trial court, and which cannot be "properly predicated upon [those pleadings]." Bockweg, 333 N.C. at 492–93, 428 S.E.2d at 162 (citing Tyler, 125 N.C. at 70, 34 S.E. at 109). Specifically, in its petition for judicial review, plaintiff only ever asserted that DNCR was "contractually bound," to continue renewing the *El Salvador* permit in support of plaintiff's argument that the OAH's final agency decision affirming the denial of the permit was "in violation of constitutional provisions, in excess of the statutory authority or jurisdiction of the agency or the administrative law judge, made upon unlawful procedure, affected by other error of law, unsupported by substantial evidence and is arbitrary, capricious and is an abuse of discretion." In this vein, plaintiff asserted that "[DNCR] had previously entered into an agreement with [plaintiff], known as the [2013] Settlement Agreement, in which [DNCR] bound itself to continue renewing [the *El Salvador* permit] 'through the year in which the QAR archaeology recovery phase is declared complete so long as the requirements contained in [the *El Salvador* permit] are fulfilled.'"

Further, nowhere in plaintiff's petition for judicial review did it make the following necessary allegations for a breach of contract claim: "[ (1) ] the existence of a contract between plaintiff and defendant, [ (2) ] the specific provisions breached, [ (3) ] the facts constituting the breach, and [ (4) ] the

14

amount of damages resulting to plaintiff from such breach." RGK, Inc. v. U.S. Fid. & Guar. Co., 292 N.C. 668, 675, 235 S.E.2d 234, 238 (1977) (quoting Cantrell v. Woodhill Enterprises, Inc., 273 N.C. 490, 497, 160 S.E.2d 476, 481 (1968)). Even assuming—without deciding—that plaintiff's aforementioned assertions were allegations concerning the existence of the 2013 Settlement Agreement, as well as the specific provision of the contract at issue, plaintiff's petition for judicial review still failed to sufficiently allege that the denial of the permit constituted a breach of the 2013 Settlement Agreement, and failed to allege an amount of damages. Therefore, the pleading before the trial court did not raise plaintiff's breach of contract claim, and plaintiff could not have "properly predicate[d]" a breach of contract claim upon that pleading. Bockweg, 333 N.C. at 493, 428 S.E.2d at 162 (citation omitted). Accordingly, the trial court erred in dismissing plaintiff's breach of contract claim based on DNCR's failure to renew the *El Salvador* permit through the doctrine of res judicata.

Intersal, 373 N.C. at 107–09, 834 S.E. 2d at 417–18.[1] Thus, as recently observed in another case in this District, in North Carolina "[r]es judicata bars the relitigation of all matters that were or should have been adjudicated in the prior action, **but it does not preclude a second action based on claims not raised by the pleadings in the first lawsuit**." Williams v. Estates LLC, No. 1:19–CV–1076, 2020 WL 887997, at *5 n.3 (M.D.N.C. Feb. 24, 2020) (emphasis added) (quotation omitted).[2]

---

[1] This Court has set out the holding in Intersal at length in an effort to accurately capture and articulate North Carolina's doctrine of res judicata.

[2] The Court notes that res judicata ordinarily precludes all actions that would have been compulsory counterclaims in the original action. See, e.g., Fickley v. Greystone Enters., Inc., 140 N.C. App. 258, 536 S.E.2d 331 (2000); see also Wright & Miller, 6 Federal Practice and Procedure § 1410 (3d ed. 2010); 18 Federal Practice and Procedure § 4414 (3d ed. 2016). In addition, where a counterclaim is asserted, "[a] defendant who interposes a counterclaim is, in substance, a plaintiff, as far as the counterclaim is concerned." Baker by Thomas v. Gen. Motors Corp., 522 U.S. 222, 238 (1998) (quoting the Restatement (Second) of Judgments § 17 (1980)); see also Wright & Miller, 18 Federal Practice and Procedure § 4414 ("Claim-preclusion rules apply to a counterclaim actually made just as they do to complaints."). Thus, in North Carolina, "under application of the rule precluding subsequent litigation of the same cause of action, a party defendant who interposes only a part of a claim by way of recoupment, setoff, or counterclaim is ordinarily barred from recovering the balance in a subsequent action." Gaither Corp. v. Skinner, 241 N.C. 532, 536, 85 S.E.2d 909, 911 (1955). Here, in the state court action, Mr. Sanders brought a counterclaim, and because Mr. Sanders acted as both a plaintiff and a defendant in the state court litigation, it appears that ordinary rules of res judicata would apply.

In the present briefing, the parties have not addressed the res judicata issue under these applicable standards. In the state court action, Plaintiff brought a counterclaim, alleging that First Tech's September 28, 2017 debt collection letter did not comply with First Tech's obligations under Article 9, N.C. Gen. Stat. § 25-9-614. In the present suit, Plaintiff brings claims against First Tech for violation of the North Carolina Debt Collection Act ("NCDCA"), contending that First Tech had no rights under the contract, and thus any attempt to collect on the debt violated North Carolina law, because the contract was void. These claims clearly involve overlapping factual issues, particularly as to the status of the contract at the time First Tech attempted to enforce its rights under the contract. However, it is not clear that the counterclaim Mr. Sanders brought in state court and the claim he brings here arise out of the same wrong. The "wrong" Mr. Sanders complained of in state court was that the September 28, 2017 letter that First Tech sent him failed to meet the requirements of Article 9 of the Uniform Commercial Code. (First Tech's Br., Ex. A [Doc. #16–1] at 16.) The "wrong" Mr. Sanders complains of here involves First Tech's attempt to collect on the debt as a violation of the North Carolina Debt Collection Act. (Am. Compl. at 8–10.) See, e.g., Foh v. Chase, No. 1:14CV928, 2015 WL 5254312, at *6 (M.D.N.C. Sept. 9, 2015) ("[T]his court finds that there is not sufficient identity between the cause of action in the state foreclosure proceeding and the causes of action under the federal and state debt collection statutes to preclude Plaintiff's claims in this action."). Moreover, applying the res judicata test as articulated in Intersal, it appears that Mr. Sanders' state court pleading did not contain facts to support the "necessary allegations" of his current NCDCA claims. Intersal, 373 N.C. at 108, 834 S.E.2d at 418. The counterclaim in the prior suit alleged that First Tech's September

16

Case 1:19-cv-00410-TDS-JEP   Document 25   Filed 08/26/20   Page 16 of 19

28, 2017 letter informing Plaintiff of its intent to sell the vehicle did not provide the notice required by Article 9 prior to disposing of the collateral. The counterclaim did not challenge any other communications and did not assert any claims or contentions for Defendants' debt collection activities or attempt to collect an invalid debt. Thus, it appears that the NCDCA claim is a separate cause of action, that the counterclaim pleading in the state action did not raise an NCDCA claim, and that Mr. Sanders "could not have properly predicated [an NCDCA claim] upon that pleading." Intersal, 373 N.C. at 109, 834 S.E.2d at 418. The Court notes again that the parties have not addressed these issues under the standard set out by the North Carolina Supreme Court in Intersal. Therefore, the Court would recommend that the present Motion to Dismiss be denied, without prejudice to the Parties addressing the issue further on dispositive motions after discovery, under the applicable standards, for further consideration if appropriate.

Finally, the Court notes that in its Motion to Dismiss, First Tech also contends that Plaintiff has failed to state a claim upon which relief may be granted. A plaintiff fails to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Here, First Tech's motion to dismiss appears to hinge on its contention that Plaintiff has been inconsistent in his pleadings. Specifically, First Tech argues that Mr. Sanders' initial state court pleadings, filed well after the debt collection letters had been sent, implicitly acknowledged the continued existence of the

17

Case 1:19-cv-00410-TDS-JEP   Document 25   Filed 08/26/20   Page 17 of 19

debt. (First Tech's Br. at 10.) If true, it would follow that First Tech acted appropriately in sending the series of collection letters, so Mr. Sanders would have no claim. (Id.)

However, it does not appear that the pleadings necessarily raise such an inconsistency. At certain points in his state court pleading, Mr. Sanders does refer to First Tech as a "secured party." (First Tech's Br., Ex. A at 7, 10; <u>see also</u> First Tech's Reply [Doc. #21] at 5.) Although naming someone as a "secured party" could potentially be considered an implicit acknowledgement of a valid security agreement, it appears that this is something Mr. Sanders attempted to contest in state court. The fact that Mr. Sanders ultimately lost the argument that First Tech could be a secured party even if no valid security agreement existed does not mean that he made that argument inconsistently, or that he is estopped from making his claim here. At this preliminary stage, First Tech has not shown that Plaintiff's prior allegations in the state court proceeding would necessarily preclude relief on the claims he asserts here. To the extent there may be remaining issues regarding the import of the prior state proceedings, First Tech can address those issues further on dispositive motions after discovery, but at this point First Tech has failed to show that Plaintiff's claim should be dismissed for failure to state a claim for relief.

For all of these reasons, First Tech's Motion to Dismiss should be denied, without prejudice to raising these issues on future dispositive motions as may be appropriate.

## III. CONCLUSION

IT IS THEREFORE RECOMMENDED that Defendant Smith Debnam's Motion to Dismiss [Doc. #17] and Defendant First Tech's Motion to Dismiss [Doc. #14] be denied.

This, the 26th day of August, 2020.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

19

Case 1:19-cv-00410-TDS-JEP   Document 25   Filed 08/26/20   Page 19 of 19